<u>NOT FOR PUBLICATION</u>

| | |
|---|---|
| **BILLIE DAVE MCCRARY,** | UNITED STATES DISTRICT COURT |
| **Plaintiff,** | DISTRICT OF NEW JERSEY |
| | Hon. Dennis M. Cavanaugh |
| -vs- | Civil Action No. 05-88 (DMC) |
| **NEW JERSEY TRANSIT RAIL OPERATIONS, INC.,** | **OPINION** |
| **Defendant.** | |

### <u>INTRODUCTION</u>

Before the Court is Defendant New Jersey Transit Rail Operation's ("NJT"or "Defendant") motion <u>in limine</u> to preclude certain lay opinion testimony. (Docket Entry No. 22.) Plaintiff Billie Dave McCrary ("Plaintiff") has responded to the motion, and Defendant has filed a reply. Pursuant to Rule 78, the motion is decided on the papers submitted. For the reasons that follow, Defendant's motion is **granted**.

### <u>BACKGROUND</u>

Plaintiff filed his complaint on January 6, 2005, alleging that he suffered injuries when a train on which he was working as an assistant conductor "suddenly and violently lurched," causing him to "lose his balance and [be thrown] into the corner of a seat." (Compl. ¶ 10.) The action is brought under the Federal Employee's Liability Act ("FELA"), 45 U.S.C. § 51 <u>et seq.</u>, the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. § 20301 <u>et seq.</u>, and the Federal Locomotive Inspection Act ("FLIA"), 49 U.S.C. §20701 <u>et seq.</u>

According to Plaintiff, the train on which the alleged accident occurred consisted of different model "Comet" passenger cars.[1] Plaintiff contends that not all Comet cars are completely compatible and that trains that include different model Comet cars "have a tendency to lurch, jump, rock side to side, and bounce up and down more than the usual passenger trains that run smoother if completely compatible cars make up the consist of the train such as Comet 3's with other Comet 3's." (Pl.'s Br. 1.)

Plaintiff has no liability expert. Plaintiff tenders three witnesses—himself, Torren Moore, and Dominick Naimo (referred to collectively as "the witnesses")—to provide lay opinion testimony to suggest that the combination of different model Comet passenger cars results in some kind of unusual movement of the railcars. The precise testimony to be offered is not identified. The implication of the proposed testimony is that it is somehow negligent, or at least undesirable, to mix different model cars and that this somehow caused or contributed to the alleged accident. Defendant moves <u>in limine</u> to preclude this testimony. A summary of the witnesses and their deposition testimony follows.

**<u>Plaintiff McCrary</u>**

Plaintiff graduated from Towson State University in 1980 with a Bachelors Degree in History Education. (Deposition of Billie Dave McCrary ("McCrary Dep."), 10/12/05,

---

[1] Comet railcars have been manufactured in various models (referred to by the parties as "series") ranging from Comet I cars to Comet V cars. <u>See</u> Wikipedia, Comet (passenger car), http://en.wikipedia.org./wiki/Comet_%28passenger_car%29 (last visited July 18, 2008). According to Plaintiff, the day of his accident he was riding on a Comet III car that was connected to a Comet V car. (Pl.'s Br. 1.)

9:22-10:12.) Prior to his employment with NJT, Plaintiff worked as: a security guard; a dishwasher; a lifeguard; a waiter; a bartender; a sales representative; a construction assistant; a stock boy; a model; an assistant manager in medical clothing; a curator for a museum; a part-time police officer; and an office clerk. (Id. at 11:20-15:13.) In 1987, Plaintiff became employed with NJT as an assistant conductor responsible for collecting tickets and fares, placing seat checks, and selling tickets. (Id. at 68:5-69:24.) On June 20, 2006, plaintiff was discharged from his employment with NJT.

Plaintiff testified that on the day of the alleged incident he was not satisfied with the operation of the train because of "faulty brakes." (Id. at 80:10-11.) He testified that the brakes were faulty because they "jolted in application." (Id. at 80:19-20.) Plaintiff further testified that this was not the first time he had observed a train "jolt" because "lots of trains that are uncommon mixtures have the same problem." (Id. at 82:5-8.) Plaintiff attempted to explain as follows: "Well, I've worked on various trains. And whenever there are different Comet models put together on a train, the braking system is not synchronized." (Id. at 82:10-12.) Plaintiff acknowledges that he is not an engineer of any kind and does not posses technical training. (Id. at 84:22.) He concluded that apart from any impact on the train's braking system, a mixture of Comet cars results in a ride that is "rougher than normal." (Id. at 140:3-6.)

**Torren Moore**

Mr. Moore was first hired by NJT in April 2001 as a trainman and was thereafter

promoted to conductor. (Deposition of Torrens Moore ("Moore Dep."), 11/17/05, 6:22-7:15.) Although he knows Plaintiff and has worked with him before, Mr. Moore does not recall Plaintiff's accident and never discussed it with him. (Id. 7:23-8:16.) When asked whether a combination of different Comet cars affects a train's braking, Mr. Moore responded: "[f]rom what I've experienced working with different engineers I've been told yes." (Id. at 13:7-8.) He explained further: "[a] lot of engineers have told me when threes are mixed, they tend to make the train bang a little more." (Id. at 13:8-15.) When asked for his opinion on the best combination of Comet cars, Mr. Moore opined: "I would just say put 3's together, put 4's together, put 5's together." (Id. at 17:3-15.) The basis for his opinion was: "[i]n my experience I think it's better—when the fives first came out, they had all the fives together and they rode pretty nice. Then all of sudden they started mixing them and all the banging started up." (Id. at 17:16-21.)

**Dominick Naimo**

Mr. Naimo was the NJT engineer on the train on which Plaintiff was riding the day of the incident. (Deposition of Dominick Naimo ("Naimo Dep."), 11/17/05, at 7:23-24.) He began his employment with NJT in September 1985 and, following his attendance at engineer school, was promoted to the position of locomotive engineer in 1995. (Id. at 6:21-7:5.) As an engineer, Mr. Naimo is responsible for, among other things, moving the "brake handle" forward, which results in air being released and the train braking. (Id. at 22:25-23:12.)

At his deposition, Mr. Naimo was asked what effect a mixture of Comet cars could

4

have on the braking system and responded, "you could possibly have—let's put it this way, you have a smoother ride with [the] same equipment than you do—because the braking systems take time to adjust to each other. That's really what I could tell you." (Id. at 13:13-22.) Mr. Naimo testified that when certain Comet cars are mixed, the braking system "could possibly" be effected, (id. at 16:4-8), and that "each comet, comet three, comet four, comet five brake systems, they are all compatible but they may—when you go to put your air, it may take a second or so for each one to react to stop the train." (Id. at 16:8-13.) When asked why, Mr. Naimo responded: "I mean as an engineer—I'm not a mechanical person, all I could tell you is the systems are meant to be together, but I don't know why—personally why it takes time for some to react differently. I mean they have different valves or something. I'm not going to answer that because I'm not a mechanical person, but I know personally as an engineer, when you go for brakes to make a train run smoother you take a little bit less out to make the train stop." (Id. at 16:15-24.) Finally, Mr. Naimo testified that different reaction times for the brakes "could possibly" result in the "shifting of the train," that a mixture of comet cars "could possibility affect your slack," that "it could possibly be a rough ride because they don't react the same way," and that lurching "could possibly happen." (Id. at 17:4-18:9.)

## DISCUSSION

### A.   The Standard for Lay Opinion Testimony

The admissibility of lay opinion testimony is governed by Federal Rule of Evidence

5

701, which provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of 702.

Fed. R. Evid. 701.

"Lay opinion testimony is permitted only where the personal knowledge, rational basis, and helpfulness standards of Rule 701 are met and the testimony does not concern scientific, technical, or specialized knowledge reserved for expert witnesses." Salisbury Real Holdings v. North Conventry Tp., No. 05-4781, 2006 WL 1555715, at *1 (E.D. Pa. June 2, 2006).[2] To satisfy Rule 701(a)—the requirement that the opinion be "rationally based on the perception of the witness"—the witness must have done more than witness something firsthand; rather, "it requires that the witness's perception provide a truly rational basis for his or her opinion." Asplundh Mfg. Div. v. Benton Harbor Eng'g, 57 F.3d 1190, 1201 (3d Cir. 1995). To satisfy subsection (b)—the requirement that the opinion be "helpful to a clear understanding of the witness' testimony or determination of a fact in issue"—an opinion

---

[2] Specialized testimony is governed by Federal Rule of Evidence 702, which states: "If scientific, technical, or otherwise specialized testimony will assist the trier of fact to understand the evidence or to determine the fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

must aid or clarify an issue that a jury may not otherwise understand and be reasonably reliable. See Asplundh, 57 F.3d at 1201; McNulty v. Citadel Broad. Corp., 58 Fed. App'x 556, 564 (3d Cir. 2003). Traditional examples of proper lay opinion testimony most often include first-hand sensory observations such as: "identification of an individual, the speed of a vehicle, the mental state or responsibility of another, whether another was healthy, [and] the value of one's property . . . ." Asplundh, 57 F.3d at 1197-98 (citations omitted).

In 2000, Rule 701 was amended by addition of subsection 701(c) to expressly exclude lay opinion based on scientific, technical, or other specialized information. The Advisory Committee's Note to the 2000 Amendment explains:

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witnesses clothing. Under the amendment, a witness' testimony mist be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702. By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 by simply calling an expert witness in the guise of a layperson.

The Third Circuit and other courts have noted the global preclusion of any kind of lay opinion on specialized or technical subjects. See Estate of Edward W. Knoster v. Ford Motor Co., 200 Fed. App'x 106, 111 n.3 (3d Cir. 2006) (Chagares, J.) ("[Defendant] cites [Asplundh] and Sipes v. United States, 111 F.R.D. 59, 61 (S.D. Cal. 1986) for the proposition

7

that Rule 701 permits lay opinion based on specialized knowledge.  But Congress amended Rule 701 in 2000, and *the new rule plainly supercedes these cases*." (emphasis added)); see also Collins v. Prudential Inv. & Ret. Servs., 119 Fed. App'x 371, 379-80 (3d Cir. 2005); Applera Corp. v. MJ Research, 389 F. Supp. 2d 344, 353 (D. Conn. 2005) (rejecting argument that lay opinion testimony on technical matters is permitted post-2000 amendment).

Following the amendment, opinions based on experience of a specialized sort can be admitted only under Rule 702.  As the advisory committee noted, "the distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in every day life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field."  Fed. R. Evid. 701 advisory committee's note to 2000 Amendment (quotations omitted).

**B.     The Dispute**

Plaintiff argues that the witnesses should be permitted to testify that "when working on trains with mismatched railcars . . . the ride is rough and the braking is rough and results in unusual movement of the cars."  (Pl.'s Br. 7.)  Plaintiff argues that their testimony will come only from "their personal observations and experiences."  (Id.)  According to Plaintiff, "[a] critical fact issue in this case is whether mismatched Comet railcars result in unsafe train movement, and therefore, was NJT negligent in permitting the train to operate with mismatched railcars."  (Pl.'s Br. 8.)  Plaintiff has no qualified expert and concedes that the witnesses "are not trained to explain the scientific intricacies, or mechanical and engineering

rationales" of why trains with different cars ride "rough"; yet, he claims they are able to testify "from [their] personal observations that the phenomena does occur." (Id.)

Defendant argues that the proffered testimony is scientific or technical and, therefore, not permitted under Rule 701. (Def.'s Br. 18-19.) Alternatively, Defendant argues that the witnesses lack sufficient, relevant specialized knowledge or experience and that the lay opinion testimony offered is completely unreliable and unhelpful. (Def.'s Br. 19-22.)

**C.   Analysis**

The amendment to Rule 701 excluding lay opinion testimony on scientific, technical or specialized matters is dispositive of the motion. The type of testimony being offered is precisely what is excluded under 701(c); that is, opinions based on scientific, technical or specialized knowledge. The effect, if any, using certain types of train cars has on a train's ride or braking system is a specialized, technical issue. Only a qualified expert can testify on this subject.

The specific testimony the witnesses would offer is not entirely clear. The parties have both attached excerpts from the witnesses' depositions, which are liberally quoted herein. This testimony refers to technical, scientific, and specialized subjects. Much of the testimony is also vague and speculative. To the extent the witnesses intend to testify at trial as they did at their depositions, they are precluded from doing so.

A cursory review of the portions of the witnesses' deposition transcripts provided to the Court confirms that the opinion proffered is on specialized, scientific, and technical

9

subjects. Some is also based on rank speculation or classic hearsay. The following examples demonstrate the many problems with this testimony. Plaintiff testified that the train on which he was riding the day of his accident likely had "faulty brakes" because they "jolted in application." (McCrary Dep. at 80:10-11, 19-20.)  He also claims that a combination of different comet cars results in a train that is "not synchronized." (Id. at 82:10-12.)  Mr. Moore testified that he has "been told" that different comet cars affect a train's braking system.  (Moore Dep. at 13:7-8.)  Mr. Naimo opined that different reaction times for the brakes "could possibly" result in the "shifting of the train," that a mixture of comet cars "could possibility affect your slack," that "it could possibly be a rough ride because they don't react the same way," that lurching "could possibly happen," and that "you have a smoother ride with [the] same equipment. . . . because the braking systems take time to adjust to each other." (Naimo Dep. at 13:13-22, 17:4-18-9.)  This type of lay opinion testimony not only lacks proper foundation, but is also expressly prohibited.

Whether combining different railcars affects a train's braking system and ride is a technical issue far beyond permissible lay opinion. "[L]ay testimony must result from a process of reasoning familiar in everyday life as opposed to a process which can only be mastered by a specialist in the field." Estate of Edward W. Knoster, 200 Fed. App'x at 111 (quotation omitted).  The operation and function of a train, much less the synchronization of its braking system, is simply not something that a layperson knows about nor can it be deduced from everyday experience.  This sort of opinion, flatly prohibited under 701, must

10

be offered through proper expert testimony in accordance with the requirements of Rule 702. See Fed. R. Evid. 701 advisory committee's notes ("Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.").

Plaintiff claims that his proposed witnesses should be able to testify on these subjects from their "personal observations." This is not so when the issue is specialized or technical. Even if a witness believes he senses a difference in certain train rides, the witness has no reliable way of knowing whether this was caused by mixing different comet cars or an infinite number of other variables (e.g., the condition of the track, the location of the incident, the train's speed, the particular locomotive being used, the order of the cars, the time of the day, and so on) that may affect a train's ride and braking. This is the type of analysis performed by experts, based on education, training, scientific testing and the like. Expert testimony that is subject to cross-examination on the specific basis for the opinion after the expert makes the required disclosures, provides a detailed report, is subject to a discovery deposition, and is ultimately qualified as an expert by the Court. Allowing lay witnesses to freely speculate about such technical matters would genuinely prejudice the Defendant and is fundamentally unacceptable.

Wholly apart from the airtight prohibition of this lay opinion testimony under 701(c), the Court would also disallow the testimony under Rule 701(a). 701(a) requires that lay opinion testimony be rationally based on the perception of the witness by ensuring that: (1)

11

the witness has perceived with his or her own senses the matter on which the opinion is based; *and* (2) there is a rational connection between the witness's opinion and his or her perception. See 29 Wright & Gold, Federal Practice and Procedure: Evidence § 6254. If a witness does not "have firsthand knowledge of the factual predicates that form the basis for the opinion," the opinion is speculative and impermissible. See Gov't of the V.I. v. Knight, 989 F.2d 619, 629 (3d Cir. 2003).

Here, there is even some question whether the witnesses are truly prepared to testify based on their personal observations. Mr. Moore testified that he has "*been told*" that when railcars are mixed "they tend to make the train bang a little more." (Moore Dep. at 13:7-15) (emphasis added). Mr. Naimo's deposition consists of expert-like speculation about the impact of different model comet cars on a train's functioning. (Naimo Dep. at 13:13-22, 16:15-24, 17:4-18:9.) Manifestly inadmissible. However, even as to the actual personal observations there is a fatal infirmity; that is, there is no rational connection between the witnesses supposed opinions and their perceptions.

It may be possible for a witness to believe that a train is riding rougher on one day than another day. Likewise, the witness may observe that a particular train consists of mixed railcars. However, their purported observation does not provide any rational basis to link one as the cause of the other. And if the witness was able to make such a link through some specialized knowledge, it could *only* be subject to expert testimony under Rule 701(c). An astronomical example borrowed from the pre-2000 Amendment Asplundh case is illustrative

12

of this particular problem with the proposed testimony:

> [I]f an issue in a case was whether the sun revolved around the earth, and the proponents of the Ptolemaic system proposed to prove their case by lay opinion testimony, such testimony could satisfy Asplundh's requirement of "firsthand" observation ("I have observed the sun firsthand for many years, and I have seen that each day it moves across the sky from the east to west."). Such testimony would also be helpful to the jury to the extent that it would tend to suggest a result that the jury should reach. And such testimony could be subjected to cross-examination by a proponent of the Copernican system. But it does not follow that this lay opinion testimony meets the rational basis or helpfulness requirements as they are contemplated by Rule 701 or that it would be admissible.

Id. at 1206. The same reasoning applies here.

## CONCLUSION

In sum, the proposed testimony is scientific, technical and specialized testimony expressly excluded by the lay opinion rule. It is also speculative, unclear, without foundation, not based on personal perception, and unreliable. For those reasons, Defendant's motion to preclude the witnesses' lay opinion testimony is **granted**. An appropriate Order accompanies this Opinion.

    s/Mark Falk
**MARK FALK**
**United States Magistrate Judge**

Orig.: Clerk of the Court
cc:    Hon. Dennis M. Cavanaugh, U.S.D.J.
        All Parties